## Pfeil's Estate.

*Wills—Contests—Descent and distribution—Family settlement—Remaindermen—Vested and contingent estates—Survivorship—Power of Orphans' Court.*

Where the terms of a will created contingent estates, and accumulations which might belong to persons not ascertainable, and whose right could not be ascertained at present, a petition to compromise a will contest by a division of the present estate was dismissed. The Orphans' Court is without power to authorize a settlement in such a case.

Petition of committee *ad litem* for leave to join in compromise. O. C. Allegheny Co., Feb. T., 1921, No. 357.

*James H. Gray*, for petitioner.

*Alter, Wright & Barron, Gifford K. Wright* and *James Milholland*, for respondents.

*Howard Zacharias*, for Gertrude Jenny.

*W. L. McConegly*, for contingent interests in estate.

*James L. Weldon*, for committee *ad litem* for Elizabeth Pfeil, lunatic.

MILLER, P. J., July 26, 1921.—This is a proceeding for the compromise of a will contest.

John Pfeil, the testator, died Nov. 10, 1920. By his will he devised all his property to three persons in trust to pay from the net income a sum not to exceed $1000 annually to each of his three sisters and one brother during their lifetime. Upon the death of his brother and all of his sisters the trust created was to terminate, and he devised whatever his estate would be at that time to the persons named as trustees, to wit, Ralph R. Kitchen, Harry Wilson and Robert E. L. Bailey, their heirs and assigns, provided that they be living when the trust was terminated; should any of the three be dead at the time the trust was terminated, the estate was to go to the survivor or survivors, their heirs and assigns. Afterwards, by writing attached, he directed that Gertrude Jenny should share under his will the same as the three above named men, she to come in for an equal one-fourth of his remaining estate.

On Feb. 16, 1921, on petition of the three sisters and the brother, alleging mental incapacity of the testator and undue influence by the persons named as the residuary beneficiaries in his will, a citation was granted upon all of the parties interested to show cause why the probate of the will should not be set aside or an issue awarded. To this an answer was filed denying the allegations of the petition. In the meanwhile, by petition filed April 1, 1921, James L. Weldon, Esq., was appointed committee *ad litem* of one of the original petitioners, Elizabeth Pfeil, under the Act of June 10, 1901, § 1, P. L. 554, it being averred and presumed to be a fact that she was of weak mind.

Before the time fixed for trial, upon petition, answer and replication, it appeared that the parties to the petition and answer had entered into an agreement of compromise, and the committee *ad litem* for Elizabeth Pfeil presented his petition June 8, 1921, asking leave to join in the compromise and settlement on behalf of his ward. With this petition was submitted the terms of the settlement executed by the brother and the other sisters of decedent and by the residuary legatees. It appears that the brother and the sisters of decedent are not married, have never had children, and that the youngest of the four is past the age of sixty years.

The estate is variously estimated to be worth from $250,000 to $400,000. By the terms of the compromise the brother and sisters would receive outright about $84,000 of the *corpus* of the estate, to be divided equally among them. On the submission of the petition of the committee *ad litem* to join in the compromise, and after due consideration, it appearing to the court that a question existed as to whether all of the parties possibly interested in this estate were parties to the compromise, W. L. McConegly, Esq., was appointed trustee for contingent interests *in esse* and *in posse*. He has filed an answer, setting forth that the court is without jurisdiction to make the order prayed for; that under the will there is an illegal accumulation of income, which, as it accrues, will belong to persons not ascertainable at present, and whose rights cannot now be determined; that the estate is contingent; that intestacy may arise, and the persons who would then take the estate cannot now be ascertained. It is upon the issue thus raised in connection with all the matters appearing on the record that this question must be determined.

Unquestionably, from the standpoint of the contestants, the brother and sisters of the decedent, the proposed compromise would be highly advantageous, and, the other parties consenting thereto, the court would go far in permitting a settlement in accordance with this family agreement.

But under the decedent's will the right of the guardian *ad litem* to a compromise settlement thereof cannot be approved.

For it will be observed that the trust does not terminate until the death of testator's brother and all of his sisters; that then the estate is vested in the four residuary legatees, provided they be living at the death of the last of the brother and sisters, and provided, further, that if any of them be dead the estate should go to the survivor or survivors. It thus appears that the residuary legatees must survive the death of the last annuitant, and it further appears and is manifest that should none of the remaindermen survive the death of the last annuitant the gift over fails. Testator does not say by his will that, if any one of the remaindermen dies prior to the last annuitant, then his heirs or assigns shall take his share, but that the party to take must be one of the survivors, or the survivors, their heirs and assigns.

By the terms of the will the estate in the remaindermen is contingent and not vested; survivorship is mandatory; if no such survivorship exists testator died intestate, and his estate goes to his next of kin, who can be many others than his brother or sisters.

It may be conceded, as was urged in the argument, that there is no probability of marriage or issue on the part of this brother or these sisters; but there is nothing to prevent adoption by any one of them of some one who would become their heir, and there certainly can be no question that the collateral relatives of this decedent, none of whom are ascertainable or upon the record, could not be deprived of his estate, should it not vest under the terms of the will by the remaindermen or some of them surviving the last of the life-tenants.

1 D. & C.

Many contingencies can arise under the provisions of this will. Should the remaindermen all die in the lifetime of this sister in her present mental condition of weakness she might be the heir to her brother's estate, and this settlement, while liberal now, giving her a fourth of the amount heretofore set forth, would deprive her of the benefit of the entire estate which would fall upon her under the law. Therefore, it cannot be said that the settlement might be to her best interests and advantage, even though favorable on its face at the present time. While the testator aims to provide against the probability that his brother or sisters should come into the principal of his estate, and this agreement would override his intention, this might not be a bar to the settlement were it not for the fact that the estate does not vest in the remaindermen named until the contingency of survivorship is a fact.

Here, as in Thistle's Estate, 263 Pa. 60, the events, upon the occurrence of which defeasibility is to operate, are contingent as fixed by the testator. In the view thus expressed, and which need not be elaborated upon, that this estate is contingent, that parties who may be entitled thereto are not ascertainable and cannot now be ascertained, the court is without power (Henderson's Estate, 258 Pa. 510) to authorize the committee *ad litem* to join in the petition for settlement, the trust cannot now be terminated, and the petition must be refused.      From Edwin L. Mattern, Pittsburgh, Pa.