Bergland Estate.

Argued October 2, 1952. Before STERN, STEARNE, JONES, BELL and MUSMANNO, JJ.

2

*Louis Vaira,* for appellant.

*Kenneth P. Christman,* for appellee.

OPINION BY MR. JUSTICE BELL, November 18, 1952:
The question involved is a very narrow one: Was the testamentary trust dry or active?

Testator died on August 22, 1950, a resident of Allegheny County. In his will he first directed the payment of his debts and funeral expenses and then in the second paragraph directed his executor to cause his body to be cremated and the ashes from such cremation sent to his sister, Anna Gronberg, of Hamngatan No. 2 Karlstad, Sweden, for such burial as she may deem fit. He next directed the payment of all taxes; bequeathed to his executor the proceeds of his insurance policies; directed his executor to convert into cash all his securities; and then provided as follows:

"Seventh. All the rest residue and remainder of my estate I give bequeath and devise to the First National Bank of New Kensington, Pa. a corporation, in trust nevertheless, for the following uses and purposes:

(a) to distribute the entire amount so received by the aforesaid to my sister Anna Gronenberg [sic], of Hamngatan No. 2 Karlstad, Sweden and the said trustee shall make payment *after having proved to its own satisfaction** that my sister so named is the person to which I refer;

(b) I further direct that my trustee herein named shall make such transmittal of any and all funds as directed in the preceding paragraph *by any accepted means that it deems fit;*

---

\* Italics throughout, ours.

(c) That the aforesaid trustee is hereby authorized to deduct from such funds as may come into its possession such sums of moneys as may be needed to satisfy any and all costs and expenses incident to the administration of the herein trust."

The inventory of testator's estate totaled nearly $39,000. There was no real estate.

It will be noted that the balance or residuary estate was, under the terms of the will, to be paid to the testator's sister not by the executor but by the trustee when the trustee, not the executor or the beneficiary, was satisfied of her identity.

On November 18, 1950, Anna Gronberg appointed Henry A. Bergstrom, Swedish Vice Consul, resident in Pittsburgh and a member of the Allegheny County Bar, as attorney-in-fact, with full power to act for her in all matters relating to her interest in this estate. At the audit of the account he appeared for Mrs. Gronberg and claimed the residue of the estate. Mrs. Gronberg contended that the trust was a dry or passive one since the trustee had no active duties to perform and requested that the balance of the estate should be awarded direct to her, without the intervention of the trustee. The Court awarded the balance of the estate to the trustee for the purposes of the trust. One of the main reasons for the request to have the fund awarded direct to Anna Gronberg was to avoid paying compensation to the trustee.

A trust merely to hold title to and deliver securities or to convey real estate to named beneficiaries has been held to be a passive or dry trust which is executed by the Statute of Uses, and is terminable at the request of the beneficiary: *Sheridan v. Coughlin*, 352 Pa. 226, 42 A. 2d 618; *Lochrie's Estate*, 340 Pa. 145, 16 A. 2d 133; *Decker Estate*, 353 Pa. 509, 46 A. 2d 218.

4

Was the trust a passive or active one? An active trust may be created as a protection to the beneficiary or for any purpose whatsoever provided the purpose is not illegal. As Chief Justice DREW said in *Bowman's Estate*, 332 Pa. 197, 199, 2 A. 2d 725: "Where it is apparent from the language creating the trust, or from the very nature of the trust, that the trustee is charged with the performance of active duties with respect to the control, management, and disposition of the trust property, the trust is an active one: *Henderson's Estate*, 258 Pa. 510; *Buch's Estate*, 278 Pa. 185. In deciding the effect of a provision in a will creating a trust, the intention of the [testator] as expressed by the language used, and not the desire of the beneficiary, is the controlling consideration: *Buch's Estate*, supra . . . ."

In *Henderson's Estate*, 258 Pa. 510, 102 A. 217, the Court said (page 513-514): " 'Active or special trusts,' says Mr. Pomeroy (3 Equity Juris., sec. 991), 'are those in which, either from the express directions of the language creating the trust, or from the very nature of the trust itself, the trustees are charged with the performance of active and substantial duties with respect to the control, management and disposition of the trust property for the benefit of the cestui que trust. They may, except when restricted by statute, be created for every purpose not unlawful, and, as a general rule, may extend to every kind of property, real and personal.' . . . We held in Rife v. Geyer, 59 Pa. 393, that whenever it is necessary for the accomplishment of any object of the creator of the trust that the legal estate shall remain in the trustee, the trust is a special active one."

We further said in *Borsch Estate*, 362 Pa. 581, 589, 67 A. 2d 119: "We said, in Stoffel's Estate, 295 Pa. 248, 145 A. 70, P. 251: 'One possessed of testamentary

capacity, who makes a will in Pennsylvania, may die with the justifiable conviction that the courts will see to it that his dispositions, legally made, are not departed from by those charged with the duty of performance, or improperly defeated by agreement between those upon whom he bestowed his bounty . . . .' "

From the language of the will itself it is clear that the testator created an active trust. The trustee had not merely the power and ministerial duty to distribute the residuary estate to the testator's sister but had the active and important duty of making payment only "after having proved to its own satisfaction that the distributee was in fact his (named) sister". Moreover, the trustee was directed to transmit the funds "by any accepted means that it deems fit"; and was further authorized "to deduct from such funds . . . such sums of moneys as may be needed to satisfy any and all costs and expenses incident to the administration of the . . . trust." It is reasonable to assume the testator believed (or knew) that because of world conditions, persons in foreign lands adjacent to the Iron Curtain may suddenly by war or otherwise disappear or be liquidated, or for some unknown reason cannot be found to receive money to which they are entitled, or that money sent to a legatee in such a country may not reach her in whole or in part.

These testamentary provisions clearly impose upon the trustee active duties and a personal discretion.

We are unanimously of the opinion that this will created an active trust and that there is no merit in the appellant's contentions.

Decree affirmed at appellant's cost.